UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DISTRICT OF COLUMBIA** *ex rel.* **Z-MODULAR, LLC,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) Case No. 18-cv-2947 (RJL/GMH) |
| **MCN BUILD, INC.,** *et al.*, | ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION AND ORDER

In this action centers on two construction contracts between Plaintiff Z-Modular, LLC ("Plaintiff" or "Z-Modular") and one of the Defendants, MCN Build ("Defendant" or "MCN"). Plaintiff has filed a motion to compel amended discovery responses from Defendant.[1] For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

### I. BACKGROUND

Plaintiff designs, engineers, and constructs modular buildings. ECF No. 1, ¶ 3. In May 2017, Defendant contracted with the District of Columbia to build two multi-family housing developments, one in Ward 7 (the "Ward 7 Project") and one in Ward 8 (the "Ward 8 Project"). *Id.*, ¶ 7. Defendant entered into two materially identical subcontracts with Plaintiff to design, engineer, and construct those buildings—the "Ward 7 Agreement" and the "Ward 8 Agreement." *Id.*, ¶¶ 14, 16.

---

[1] The docket entries most relevant to the resolution of this motion are: (1) Plaintiff's Complaint (ECF No. 1); Defendant's answer and counterclaims (ECF No. 15); (3) Plaintiff's motion to compel (ECF No. 30) and its exhibits; (4) Defendant's opposition (ECF No. 35) and its exhibits; and (5) Plaintiff's reply (ECF No. 36) and its exhibits.

The Complaint alleges that Plaintiff completed the Ward 7 Project on June 22, 2018, and the Ward 8 Project on August 2, 2018, and that under the two agreements, Defendant was obligated to pay it a total of $8,082,401.73. *Id.*, ¶¶ 26, 29, 31, 39. However, according to Plaintiff, Defendant has remitted only $1,402,143.75, leaving an unpaid balance of $6,680,257.98. *Id.*, ¶ 40. Plaintiff alleges that Defendant has thereby breached the contracts.[2] *Id.*, ¶¶ 52–61.

Defendant has asserted certain affirmative defenses, among them that Plaintiff's claims are barred by the doctrines of unclean hands, estoppel, and waiver. ECF No. 15, ¶¶ 77, 81, 84. Defendant also alleges, by way of counterclaim, that Plaintiff failed to complete its work by the deadlines set in the Ward 7 Agreement and the Ward 8 Agreement and that Plaintiff's submission of revised schedules projecting completion dates after those deadlines constituted anticipatory breaches of the agreements. *Id.*, ¶¶ 105, 108, 115–116, 119–120. Plaintiff's alleged failure to timely execute its work reportedly required Defendant to incur expenses totaling $6,443,049.00.[3] *Id.*, ¶¶ 125–130.

In February 2020, Plaintiff filed a motion to compel contending that Defendant's responses to eighteen of Plaintiff's requests for admissions (RFAs), two of Plaintiff's interrogatories, and one of Plaintiff's requests for production of documents are insufficient. ECF No. 30-1. After that motion was fully briefed, this case was referred to the undersigned for management of all non-dispositive matters, including discovery disputes. The undersigned held a telephonic discovery hearing on the motion on July 13, 2020 (the "July 13 Hearing"), at which a ruling on each of the

---

[2] Plaintiff also seeks recovery from Defendant in quantum meruit and asserts claims against Zurich American Insurance Co. and Fidelity and Deposit Co. of Maryland for allegedly failing to pay Plaintiff for its labor, materials, and services pursuant to payment bonds they issued on behalf of Defendant. ECF No. 1, ¶¶ 10, 42–51, 62–71. Those claims are irrelevant to the dispute here.

[3] Defendant also alleges that Plaintiff is liable for payment of two performance bonds executed in favor of Defendant. ECF No. 15, ¶¶ 89, 109–110, 131–162. Those claims are also irrelevant to the dispute here.

disputes was announced from the bench. This Memorandum Opinion and Order memorializes and more fully explains those rulings.

## II.   DISCUSSION

### A.   RFAs

Requests for Admissions are governed by Rule 36 of the Federal Rules of Civil Procedure. That rule "requir[es] the respondent to 'admit,' 'specifically deny,' or 'state in detail the reasons why the answering party cannot truthfully admit or deny [the matter]' in response to each Request for Admission." *Light v. Carranza*, No. 08-cv-1074 (RMU/AK), 2011 WL 13244745, at *2 (D.D.C. Sept. 28, 2011) (second alteration in original) (quoting Fed. R. Civ. P. 36(a)(4)). A party may provide a qualified answer as long as the answer "specif[ies] the part admitted and qualif[ies] or den[ies] the rest." Fed. R. Civ. P. 36(a)(4); *see also Mir v. Kirchmeyer*, No. 12cv2340, 2016 WL 3430559, at *2 (S.D. Cal. June 22, 2016) ("Qualified answers are proper if the responding party specifies the part admitted and qualifies or denies the rest."). If the responding party believes a request to be improper, it may object to the request or move for a protective order. *See, e.g.*, *Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993).

"The party requesting admissions 'may move to determine the sufficiency of an answer or objection.'" *Light*, 2011 WL 13244745, at *2 (quoting Fed. R. Civ. P. 36(a)(6)). If the court finds that an answer does not comply with the dictates of Rule 36, "the court may order either that the matter is admitted or that an amended answer be served." *Id.* (quoting Fed. R. Civ. P. 36(a)(6)). However, deeming a matter admitted is a "severe sanction" that should be imposed only "where it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)." *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 556 (D.N.M. 2011) (quoting *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981)); *see also,*

*e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386 (KMW)(HBP), 01 Civ. 1909 (KMW)(HBP), 2009 WL 1457142, at *5 (S.D.N.Y. May 26, 2009) ("Deeming a matter as admitted is a 'severe sanction.'" (quoting 7 *Moore's Federal Practice* §36.12[3] (3d ed. 2009))); *JZ Buckingham Invs. LLC v. United States*, 77 Fed. Cl. 37, 46 (Fed. Cl. 2007) ("In fact, many federal courts are disinclined to deem matters admitted when they find the responding party's answers to requests for admission to be deficient." (citing *Kendrick v. Sullivan*, No. 83-3175 (CRR), 1992 WL 119125, at *5 (D.D.C. May 15, 1992))).

      1.    Allegedly Evasive Answers

Plaintiff argues that Defendant's answers to twelve RFAs—RFA Nos. 1, 5, 9, 11, 17, 19, 23, 24, 26, 29, 32, and 35—are "evasive." ECF No. 30 at 5. Each of those RFAs is in a similar form, asking Defendant to admit that certain provisions in the Ward 7 Agreement and the Ward 8 Agreement required certain conduct by one or both of the parties. For example, RFA Nos. 1 and 5 concern Section 1.0 of Exhibit A in each of the agreements and ask Defendant to admit that the under that section, "Z-Modular and MCN agreed that Z-Modular would provide podium steel design and engineering services on a time and materials basis."[4] ECF No. 30-10 at 3, 4. In response, Defendant "[a]dmitted only that under Section 1.0 of Exhibit A . . . Z-Modular agreed to provide 'podium steel design and engineering . . . on [a] T&M basis . . . [.]'"[5] *Id.* (quoting ECF No. 30-13 at 19 (Ward 7 Agreement, Exh. A, § 1) and ECF No. 30-14 at 19 (Ward 8 Agreement, Exh. A, § 1)). Defendant provided a similar response to each of Plaintiff's RFAs that were similarly worded, "admitting" them by parroting the language of the agreements—or, as Defendant would have it,

---

[4] Construction contracts are generally paid on a "fixed price" basis or a "time and materials" basis. "A fixed price basis means that the line item for work would have an agreed-upon price prior to work commencing. A 'time and materials' contract is one where the customer is billed on an ongoing basis as labor is expended and materials are used." *Jones Boat Yard, Inc. v. M/V CAPELLA C*, No. 06-21203-CIV, 2006 WL 3664405, at *2 (S.D. Fla. Nov. 17, 2006).

[5] At the July 13 Hearing, Defendant admitted that "a T&M basis" means a "time and materials basis."

making an "admission qualified only by recitation of the actual language in the provision at issue." ECF No. 35 at 6.

Those answers are insufficient. In effect, they assert merely that the documents speak for themselves. Such responses have generally been held inadequate when proffered in connection with an RFA. *See, e.g.*, *D.R.A. Servs., LLC v. Hallmark Ins. Co.*, No. 13-CV-172, 2014 WL 11498163, at *5 n.2 (D. Wyo. Feb. 25, 2014) (collecting cases); *cf. Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006) ("[O]bjections that documents . . . 'speak for themselves' . . . are improper[.]" (ellipses in original) (quoting *Diederich v. Dep't of the Army,* 132 F.R.D. 614, 617 (S.D.N.Y.1990))). Indeed, they are not responsive to the questions Plaintiff has posed. Although the RFAs could be worded more precisely, they are fairly read to seek admissions as to Defendant's understanding of the meaning of the contractual provisions at issue. At the July 13 Hearing, Plaintiff specified that the purpose of those RFAs was precisely that—to determine if the parties both understood the relevant provisions in the same way. Courts have held that, although an RFA that seeks a pure legal conclusion may be improper, *see, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 11 (D.D.C. 2011), "where the question of the meaning of the document is at issue in the case, a request directed to another party seeking admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement [of] fact, and [is] authorized by Rule 36." *Sigmund*, 236 F.R.D. at 46 (first alteration in original) (quoting *Booth Oil Site Admin. Gp. v. Safety–Kleen Corp.,* 194 F.R.D. 76, 80 (W.D.N.Y.2000)); *see also D.R.A. Servs.*, 2014 WL 11498163, at *5 n.2 ("A request for admission relating to the interpretation of a contract at issue is acceptable under the federal rules. Even if a document's meaning or the parties' intent concerning a contractual provision is an issue to ultimately be ruled upon, the responding party must nonetheless give its understanding of

5

the meaning or intent." (internal citations omitted) (citing *Sigmund*, 236 F.R.D. at 46, and *Booth Oil*, 194 F.R.D. at 80)); *Disability Rights Council v. Wash. Metro. Area Transp. Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006) ("[T]he intent of the parties to a contract and what they understood the contract to mean is [ ] an issue of fact."); *Booth Oil*, 194 F.R.D. at 82 ("If interrogatories may require a party to state the nature and basis of a contention regarding the existence or meaning of a document at issue, the court fails to see why a request for admission may not seek to limit the need for proof regarding the text and meaning of a particular provision of a document."). That is true "[e]ven if the meaning of a document or the intent of the parties as to a contractual provision is the issue ultimately to be decided." *Sigmund*, 236 F.R.D. at 46 (quoting *Booth Oil*, 194 F.R.D. at 80); *see also In re Rail Freight*, 281 F.R.D. at 10 ("Rule 36 allows litigants to request admissions as to a broad range of facts, including ultimate facts, as well as applications of law to fact." (quoting *Carney v. IRS*, 258 F.3d 415, 419 (5th Cir. 2001))).

Plaintiff asks the Court to order that these RFAs be deemed admitted. ECF No. 30-1 at 5. It has not shown that such a "severe sanction" is warranted here. *Wiwa*, 2009 WL 1457142, at *5. Instead, on or before July 20, 2020, Defendant shall amend its answers as directed at the July 13 Hearing and in accordance with this Memorandum Opinion and Order.

        2.        Allegedly Bad Faith Denials

                a.        RFA Nos. 27, 30, 33, and 36

These RFAs concern the following provision in the agreements:

§ 3.4.2 The Contractor's claims for the costs of services or materials provided due to the Subcontractor's failure to execute the Work shall require

    .1    three days' written notice prior to the Contractor's providing services or materials, except in an emergency; and

    .2  written compilations to the Subcontractor of services and materials provided by the Contractor and charges for such services and materials no later than the fifteenth day of the month following the Contractor's providing such services or materials.

ECF No. 30-13 at 6; ECF No. 30-14 at 6. The RFAs ask Defendant to "admit that compliance with Section 3.4.2.1. of the [agreements] is required before MCN can recover the costs of services or materials provide due to Z-Modular's failure to complete its work" (ECF No. 30-10 at 10, 11 (RFA Nos. 27, 30)) and to "admit that compliance with Section 3.4.2.2 of the [agreements] is required before MCN can recover the costs of services and materials provided due to Z-Modular's failure to complete its work" (ECF No. 30-10 at 12 (RFA Nos. 33, 36)).

  Defendant denied all four of these RFAs (ECF No. 30-10 at 10, 11, 12, 13), explaining that "[i]ssues such as waiver, estoppel, unclean hands, and others" might "impact the ultimate determination of whether strict compliance with the referenced subcontract provision is required"[6] (ECF No. 35 at 6). Plaintiff contends that "MCN's excuses do not have merit" because "discovery cannot uncover any set of facts that would result in waiver or estoppel" and because "the doctrine of unclean hands . . . is inapplicable under any conceivable set of circumstances." ECF No. 30-1 at 8–9; *see also* ECF No. 36 at 4. That is, Plaintiff asks the Court to grant its motion because those affirmative defenses are meritless or "frivolous" (ECF No. 30-1 at 8), which is improper at this juncture. *See, e,g,*, *Rackliffe v. Rocha*, No. 1:07-cv-0603, 2012 WL 1158855, at *1 n.1 (E.D. Cal. Apr. 6, 2012) (refusing to address the merits of the plaintiff's claim when ruling on a motion to compel).

---

[6] To the extent that Defendant argues that these RFAs are improper because they seek legal conclusions, the argument is rejected for the reasons discussed above in Section II.A.1. These RFAs, like those previously addressed, properly ask for MCN's understanding of the contractual provisions at issue. *See D.R.A. Servs.*, 2014 WL 11498163, at *5 n.2; *Sigmund*, 236 F.R.D. at 46; *Booth Oil*, 194 F.R.D. at 82.

More fundamentally, Plaintiff's attempt to litigate the accuracy of Defendant's responses to these RFAs is not appropriate at this time. "[A] motion to determine the *sufficiency* of a response is 'not to be used as an attempt to litigate the *accuracy* of a response.' A response can be sufficient, even if it is not ultimately determined to have been accurate." *Wiwa*, 2009 WL 1457142, at *5 (quoting *Moore's Federal Practice* § 36.12[3]); *see also, e.g.*, *San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 15cv1401, 2017 WL 3877731, at *4 (S.D. Ca. Sept. 5, 2017) (stating that "[i]n a motion to compel, the issue is whether the response to the request . . . is legally sufficient, not whether it is accurate."); *United States v. Operation Rescue Nat'l*, 111 F. Supp. 2d 948, 968 (S.D. Ohio 1999) (stating that a response "is insufficient if it is not specific or the explanation for the refusal to admit or to deny lacks detail, not because the denial may be contrary to the evidence"); *Foretich v. Chung*, 151 F.R.D. at 4–5 (finding that it is improper for a court to "make a factual determination of the accuracy of a party's denial" on a motion challenging the sufficiency of a response to an RFA). Rather, the consequences for an inaccurate failure to admit are found at Rule 37(c), which allows the requesting party to recover expenses incurred in proving the truth of a matter that the responding party denied in response to an RFA. *See* Fed. R. Civ. P. 37(c)(2); *see also, e.g.*, *San Diego Unified Port Dist.*, 2017 WL 3877731, at *4.

Here, Plaintiff has a sufficient response: a clear denial. The accuracy of that response can, if appropriate, be litigated at a later time in connection with a motion pursuant to Rule 37(c). Plaintiff's motion to compel is therefore denied on this ground.

      b.      RFA Nos. 2 and 6

RFA Nos. 2 and 6 concern Section 10.1 of the agreements, which states, "The Contractor [MCN] shall pay the Subcontractor [Z-Modular] in current funds for performance of the Subcontract the Subcontract Sum of [$3,674,268.00 in the Ward 7 Agreement and $5,673,357.00 in the

8

Ward 8 Agreement] . . . subject to additions and deductions as provide in the Subcontract Documents." ECF No. 30-13 at 12; ECF No. 30-14 at 12. The RFAs ask Defendant to "[a]dmit that podium steel design and engineering services are not include in the Subcontract Sum listed in Section 10.1 of the [agreements]." ECF No. 30-10 at 3, 4.

Defendant denied the RFAs, explaining that "Exhibit A of the [agreements] contains multiple references to work related to the podium which may have include design and engineering components; therefore the [agreements'] Subcontract Sum may have included elements of podium steel design and engineering services." *Id.* at 3, 4. Plaintiff objects that those costs could not have been included in the fixed Subcontract Sums because both agreements provide that the podium streel design and engineering services were to be provided on a "time and materials" basis, which, as noted, *supra* note 4, means that "the customer is billed on an ongoing basis as labor is expended and materials are used" rather than having agreed to a particular price prior to the work being done. *Jones Boat Yard*, 2006 WL 3664405, at *2. Moreover, Plaintiff states that the employees of Defendant who signed the agreements testified in their depositions that steel design and engineering were to be paid on a time and materials basis. ECF No. 30-1 at 10; ECF No. 36 at 5 (citing ECF No. 30-15 at 5–6 and ECF No. 30-16 at 6).

This dispute, like the one discussed above in Section II.A.2.a, concerns the accuracy of Defendant's denials rather than their sufficiency. Defendant's denial, whether or not it turns out to be accurate, is not improper.[7] Plaintiff's motion is denied on this ground.

---

[7] Again, the accuracy of that response can be tested later.

### B. Interrogatories

1. Interrogatory 1

This interrogatory asks Defendant to "[s]et forth an itemized statement of all damages MCN claims to have sustained in connection with its alleged claims," and to specify, among other things, "the [B]ates number corresponding to any invoice or other documentation showing that the service, labor[,] or materials were provide." ECF No. 30-17 at 3. Defendant responded "pursuant to Rule 33(d)" of the Federal Rules of Civil Procedure, asserting that the answer to the interrogatory could be "derived from reviewing the documents previously produced by Defendant per an agreement between the parties including, but not limited to," 44 individual documents identified by Bates number, as well as the "project file," which spans over 25,000 Bates numbers, *i.e.*, MCN00017499–MCN00043104. *Id.* at 4.

Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > [ ] specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party.

Fed. R. Civ. P. 33(d)(1). The rule requires that "the burden of compiling the information [must] be substantially the same for the inquiring and the responding parties." 8B Richard L. Marcus, *Federal Practice and Procedure* § 2178 (3d ed.). Moreover, "the responding party must specify which records contain the information sought by the interrogatory" and must not merely "direct[ ] the interrogating party to a mass of business records or [ ] offer[ ] to make all of [its] records available." *Id.* (quoting Fed. R. Civ. P. 33, advisory committee's note to 1980 amendment). Defendant has not met those requirements.

From the briefing on this motion to compel, it appears that ascertaining or deriving the requested information from the business records would be significantly more burdensome to Plaintiff than to Defendant. Defendant has already calculated the damages it asserts were caused by Plaintiff's alleged failures. Its counterclaims state that, "[i]n total, MCN incurred additional costs of $3,282,877 for the Ward 7 Project and $3,160,182 for the Ward 8 Project as a direct result of Plaintiff's failure to perform its Subcontracts and to provide fully fit-out modules by the agreed upon dates in the subcontracts." ECF No. 15 at 24. Moreover, MCN has compiled a spreadsheet that estimates its damages. ECF No. 15 at 24; ECF No. 36-2. "[W]hen the responding party has already culled the requested information from its records, as part of its trial preparation or for other reasons, that may indicate that it would be substantially more burdensome for the inquiring party to compile the information." 8B Richard L. Marcus, *Federal Practice and Procedure* § 2178 (3d ed.). More, Plaintiff points out that one of Defendant's witnesses testified at his deposition that "the costs of completing Z-Modular's scope [of work] (*i.e.*, MCN's alleged damages) were 'lumped together with other charges,'" making it difficult for Z-Modular to distinguish between "charges for completing Z-Modular's scope and unrelated charges." ECF No. 36 at 6 (quoting ECF No. 36-1 at 4 (excerpt from deposition transcript of Frank Lefler)). Defendant, which incurred those charges, is in a better position to make that distinction. *See, e.g.*, *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (rejecting the plaintiffs' burden argument under Rule 33(d) where the interrogatories were focused on allegations in the plaintiffs' complaint and therefore related to facts within the possession of the plaintiffs that supported their own allegations).

Additionally, Defendant has attempted to satisfy its obligation by directing Plaintiff to over 25,600 Bates-numbered documents.[8]  Courts have indicated that pointing the requesting party to thousands of documents does not fulfill the requirement that the responding party specify which records contain the information sought by the interrogatory.  *See, e.g.*, *Haughton v. District of Columbia*, 161 F. Supp. 3d 100, 102–03 (D.D.C. 2014) (affirming the magistrate judge's decision that it was improper for a responding party to refer the interrogating party to thousands of documents without further specifying page ranges in which the information sought could be found); *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278–79 (D. Md. 2012) ("A document dump of thousands of documents will not suffice."); *Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1108–09 (D. Neb. 2009) (finding that an interrogatory response that directed the requesting party to 7,000 documents in seven files, without any further guidance, was "deficient" in part because the responding party was "certainly more familiar with its own business records than [were] the [requesting parties]").

As agreed at the July 13 Hearing, on or before July 20, 2020, Plaintiff and Defendant will meet and confer to agree on the format of and deadline for Defendant's amended response to Interrogatory No.1, including whether a representative of Defendant should sit for a Rule 30(b)(6) deposition regarding the issue of Defendant's claimed damages.

    2.      Interrogatory No. 2

This interrogatory concerns Section 3.4.2 of the agreements, which, as noted above, required Defendant to provide a "written compilation" to Plaintiff of the charges Defendant incurred as a result of Plaintiff's failure to execute its work.  ECF No. 30-13 at 6; ECF No. 30-14 at 6.

---

[8] As Z-Modular explains, each Bates number corresponds to a document rather than a single page within a document, so the number of pages included in those records is likely greater than 25,600.  ECF No. 30-1 at 10 n.2; ECF No. 36 at 6 n.3.

Those compilations were to be tendered to Plaintiff "no later than the fifteenth day of the month following [Defendant's] providing such services or materials." *Id.*

Interrogatory No. 2, in relevant part, asks Defendant to "[i]dentify, by [B]ates number, all . . . written compilations MCN claims satisfy its obligations under Section[ ] . . . 3.4.2.2 of the [agreements]." ECF No. 30-17 at 5. In its original response, Defendant pointed Plaintiff to two documents identified by their Bates number (*see id.*), neither of which, according to Plaintiff, "can reasonably be construed as a compilation, let alone a compilation that satisfies Section 3.4.2.2." ECF No. 30-1 at 12.

At the July 13 Hearing, the parties informed the Court that, after briefing on this motion to compel was completed, Defendant amended its answers to two RFAs (not at issue here), admitting that it had not submitted any compilations to Plaintiff that complied with the time limit imposed in Section 3.4.2.2 of the agreements. Plaintiff therefore sought amendment of Defendant's answer to Interrogatory No. 2 to harmonize it with those RFA responses.

Plaintiff's request is granted. Defendant shall amend its response to Interrogatory No. 2 on or before July 20, 2020.

### C. Request for Production

At the July 13 Hearing, both parties agreed that this motion is moot to the extent that it seeks a response to Plaintiff's Request for Production No. 20.

### III. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that Plaintiff's motion to compel (ECF No. 30) is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that, in accordance with the discussion above, Defendant shall serve amended answers to RFA Nos. 1, 5, 9, 11, 17, 19, 23, 24, 26, 29, 32, and 35 on or before **July 20, 2020**. It is further

**ORDERED** that, on or before **July 20, 2020**, Plaintiff and Defendant shall meet and confer regarding the format of and deadline for Defendant's amended response to Interrogatory No. 1. It is further

**ORDERED** that the parties shall submit a joint status report regarding the resolution of their dispute as to Interrogatory No.1 on or before **July 20, 2020**. It is further

**ORDERED** that Defendant shall serve an amended answer to Interrogatory No. 2 on or before **July 20, 2020**.

**SO ORDERED.**

Date:  July 15, 2020

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE